# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### 5:15-cv-58-RLV
### (5:11-cr-73-RLV-DSC-9)

| | | |
|---|---|---|
| EVELYN LOUISE PETERS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or

Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's

Response to Petitioner's Motion to Vacate, (Doc. No. 3).

## I.  BACKGROUND

In 2009, law enforcement officials began investigating a large-scale methamphetamine

conspiracy that stretched between Wilkes, Catawba, and Yadkin Counties.  (Crim. Case No.

5:11-cr-73-RLV-DSC-9, Doc. No. 336 at ¶ 9: PSR).  The conspiracy involved a large group of

individuals purchasing pseudoephedrine and using it to make methamphetamine.  (Id.).  The

members who cooked methamphetamine coordinated multiple co-conspirators (also known as

"smurfs") to go from pharmacy to pharmacy to purchase the pseudoephedrine needed to

manufacture the methamphetamine.  (Id. at ¶ 10).  Law enforcement officers located at least

seventeen methamphetamine laboratories that were involved in the conspiracy, and each

laboratory used the dangerous "shake and bake" method of manufacturing methamphetamine.

(Id. at ¶ 11).

Based on the Pseudoephedrine Sales Logs from several pharmacies in the area, during the course of the conspiracy coconspirators purchased 1,905 boxes of pseudoephedrine, or 3,861.62 grams of pseudoephedrine, which yielded 3.5 kilograms of methamphetamine. (Id. at ¶ 10). Petitioner was identified as an organizer or leader of the conspiracy. (Id. at ¶ 9). As a participant in the conspiracy, Petitioner purchased methamphetamine from Arnold Dowell and others to sell; she cooked methamphetamine; she taught at least one other person how to manufacture it; she allowed others to manufacture methamphetamine at her house; and she purchased pseudoephedrine and drove others to make pseudoephedrine purchases. (Id. at ¶¶ 12-38).

According to one co-conspirator, Petitioner supplied Dowell with 100 boxes of pseudoephedrine. (Id. at ¶ 32). Additionally, Dowell was seen with $3,000 to $5,000 in cash after Petitioner had paid him for methamphetamine. (Id. at ¶ 17). Another witness stated that Petitioner was present at a residence where methamphetamine was manufactured while two minors were present. (Id. at ¶ 13). During a search of Petitioner's residence, officers found evidence of a methamphetamine laboratory, as well as a Tangfolio .25 caliber firearm. (Id. at ¶ 37). Petitioner was described as a methamphetamine cook, "smurfer," distributor, and leader in the conspiracy. (Id. at ¶ 39). She was found to be responsible for at least 500 grams, but less than 1.5 kilograms, of methamphetamine. (Id.).

As a result of the investigation, Petitioner was indicted for conspiracy to distribute, to possess with intent to distribute, and to manufacture at least 500 grams of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) (Count One); possession of pseudoephedrine with reasonable cause to believe that it would be used to

manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(c)(2), 802(34)(K) (Count

Two); and aiding and abetting possession of materials to make methamphetamine, in violation of

21 U.S.C. §§ 843(a)(6), (d)(2), and 18 U.S.C. § 2 (Count Nine). (Id., Doc. No. 1: Indictment).

Petitioner agreed to plead guilty to Count One, and the Government agreed to dismiss Counts

Two and Nine. (Id., Doc. No. 162 at ¶¶ 1; 2: Plea Agreement).

As part of the plea agreement, Petitioner agreed to a joint recommendation to the Court

that the amount of methamphetamine involved or reasonably foreseeable to her was at least 500

grams, but less than 1.5 kilograms; that she should receive a three-level increase under U.S.S.G.

§ 3B1.1(b) (manager or supervisor); that her plea was timely for purposes of U.S.S.G. § 3E1.1(b)

(acceptance of responsibility); and that a sentence within the applicable guidelines range was

appropriate. (Id. at ¶ 7). Petitioner acknowledged that the mandatory minimum sentence for the

offense was ten years of imprisonment and that the statutory maximum was life imprisonment.

(Id. at ¶ 4). She also agreed that there was a factual basis for her plea and that the Court could

use any non-contested facts in the PSR to establish the factual basis for her plea. (Id. at ¶ 14).

Petitioner waived the right to appeal her conviction or sentence or to challenge it in any

post-conviction proceeding, except as to claims of ineffective assistance or prosecutorial

misconduct. (Id. at ¶ 19). During the plea hearing, Petitioner affirmed that she understood the

charges and penalties that she faced; that she had spoken with her attorney about how the

Sentencing Guidelines might apply to her case, but understood that the applicable guidelines

range could not be determined until after the PSR was prepared and that she could receive a

higher or lower sentence than the guidelines range; that she understood and agreed to the terms

of the plea agreement; that no one had threatened, intimidated, or forced her to plead guilty; that

she had sufficient time to discuss any possible defenses with her attorney; and that she was satisfied with her attorney's services. (Id., Doc. No. 171 at ¶¶ 9; 12-14; 24-33: Acceptance and Entry of Guilty Plea).

The Probation Officer issued a PSR, calculating Petitioner's base offense level as 32, based on the offense involving at least 500 grams, but less than 1.5 kilograms, of methamphetamine. (Id., Doc. No. 336 at ¶ 46). Furthermore, the adjusted offense level was 45, based on a two-level increase for possession of a firearm during the offense; a two-level increase for maintaining a residence for the purpose of manufacturing a controlled substance; a six-level increase due to the offense creating a substantial risk of harm to the life of a minor; and a three-level increase for being a manager or supervisor where the offense involved five or more participants. (Id. at ¶¶ 47-49; 51; 53). Allowing a three-level reduction for acceptance of responsibility, Petitioner's total offense level was 42. (Id. at ¶¶ 55-57). In light of her criminal history category of I, the applicable guidelines range was 360 months to life imprisonment. (Id. at ¶ 89).

Petitioner objected to the PSR, arguing that she should not receive a two-level enhancement for possession of a firearm during the offense and that the evidence did not support the enhancement for creating a substantial risk of harm to the life of a minor. (Id., Doc. No. 395: Def.'s Obj. to PSR). She also filed a sentencing memorandum, arguing that, given the stipulations in the plea agreement, the applicable guidelines range should be 32, with a sentencing range of 121-151 months of imprisonment. (Id., Doc. No. 709 at 1-2: Def.'s Sent. Memo.). She argued that, based on her history and characteristics, a 121-month sentence was appropriate. (Id. at 2-7).

The Government moved for a two-level downward variance based on the proposed amendment to U.S.S.G. § 2D1.1(c) (drug quantity table). See (Id., Doc. No. 712: Limited Waiver). At sentencing, this Court sustained Petitioner's objections to the enhancements for possession of a firearm during the offense and for creating a substantial risk of harm to a minor, resulting in a total offense level of 34 and a guidelines range of 151-188 months of imprisonment. (Id., Doc. No. 721 at 1: Statement of Reasons). This Court sentenced Petitioner below the advisory guidelines range based on the Government's recommendation for a two-level downward variance, as well as Petitioner's military service, her acceptance of responsibility, her positive response to incarceration, and the need to avoid unwarranted sentencing disparities. (Id. at 3). Applying an offense level of 32, this Court sentenced Petitioner to 121 months of imprisonment and five years of supervised release. (Id., Doc. No. 720: Judgment). Judgment was entered on May 5, 2014, and Petitioner did not appeal. (Id.).

Petitioner placed the instant motion to vacate in the prison system for filing on May 5, 2015, and it was stamp-filed in this Court on May 11, 2015. In the motion to vacate, Petitioner claims that defense counsel was ineffective for various reasons. First, Petitioner argues that her attorney "pushed" her into accepting the plea agreement. (Doc. No. 1-1 at 2). Because the plea agreement included a three-point adjustment for being a manager or supervisor of the conspiracy and accepted responsibility for a specific quantity of drugs, Petitioner asserts that it disqualified her from being sentenced below the mandatory minimum sentence under the safety-valve provision, and it prevented her from challenging her role in the offense and the quantity of drugs at sentencing and on appeal. (Id.). Petitioner also argues that her attorney failed to investigate her role in the offense or the applicable drug quantity. (Id. at 4). She asserts that she "insisted

that this information provided by others is not the truth" and that the co-defendants "could have

deliberately lied" about her conduct.  (Id.).  She contends that her attorney should have

renegotiated the terms of her plea agreement and that if her attorney had been unable to

renegotiate the terms, then Petitioner "could have utilized other options," including proceeding to

trial or preserving her right to appeal.  (Id. at 4-5).  She also asserts that the drug quantity

applicable to her "could have been less than the quantity of the other defendants" and that she

could only be sentenced for her relevant conduct.  (Id. at 4).  Finally, Plaintiff states in the

motion to vacate that she requests an evidentiary hearing and appointment of counsel.

## II.  STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to

promptly examine motions to vacate, along with "any attached exhibits and the record of prior

proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the

claims set forth therein.  After examining the record in this matter and the Government's

Response, the Court finds that the arguments presented by Petitioner can be resolved without an

evidentiary hearing based on the record and governing case law.  See Raines v. United States,

423 F.2d 526, 529 (4th Cir. 1970).  Furthermore, to the extent that Petitioner seeks appointment

of counsel, the Court denies her request.

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions,

the accused has the right to the assistance of counsel for his defense.  See U.S. CONST. amend.

VI.  To show ineffective assistance of counsel, a petitioner must first establish a deficient

performance by counsel and, second, that the deficient performance prejudiced him.  See

Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is

"a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance."  Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir.

2010).  Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant

relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or

unreliable.'"  Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell,

506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of

affirmatively proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the

petitioner fails to meet this burden, a "reviewing court need not even consider the performance

prong."  United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other

grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "'there

is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded

guilty and would have insisted on going to trial.'"  Meyer v. Branker, 506 F.3d 358, 369 (4th Cir.

2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  The petitioner's "subjective

preferences" are not dispositive, but rather the test is "whether proceeding to trial would have

been objectively reasonable in light of all of the facts."  United States v. Fugit, 703 F.3d 248, 260

(4th Cir. 2012), cert. denied, 134 S. Ct. 999 (2014).  In evaluating claims under § 2255,

statements made by a defendant under oath at a plea hearing carry a "strong presumption of

verity" and present a "formidable barrier" to subsequent collateral attacks.  Blackledge v.

Allison, 431 U.S. 63, 73-74 (1977).  As the Fourth Circuit has made clear, "courts must be able

to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea

colloquy," and § 2255 claims that contradict a petitioner's plea colloquy are deemed "patently frivolous or false," except in extraordinary circumstances. United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005). Extraordinary circumstances include being unrepresented and severely ill at the time of the plea, or receiving admittedly ineffective assistance that renders a plea involuntary, where the written plea agreement and plea colloquy do not contradict counsel's inaccurate advice. Id.; United States v. White, 366 F.3d 291, 297-300 (4th Cir. 2004).

**A. Petitioner's contention that counsel pressured her into pleading guilty and that her counsel failed to adequately investigate the offense**

Petitioner first contends that counsel pressured her into pleading guilty and that counsel failed to adequately investigate the offense, including the amount of drugs that were attributable to Petitioner. Petitioner's contentions are without merit. First, Petitioner does not directly allege that her guilty plea was involuntary. Rather, she states that her attorney "pushed" her into accepting the plea agreement. (Doc. No. 1 at 4; Doc. No. 1-1 at 2). Even if this could be construed as an assertion that she was forced to plead guilty, such a contention would be frivolous in light of Petitioner's testimony at the plea hearing that no one had threatened, intimidated, or forced her to plead guilty, and that she understood and agreed to the terms of the plea agreement. (Crim. Case No. 5:11-cr-73-RLV-DSC-9, Doc. No. 171 at ¶¶ 25; 29). Petitioner has not alleged any circumstances, let alone extraordinary circumstances, that would overcome her sworn testimony that her guilty plea was made freely and voluntarily. Accordingly, she has not shown any ineffective assistance of counsel with respect to the voluntariness of her guilty plea. See United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

Furthermore, Petitioner's contention that her counsel should have done more to investigate her role in the conspiracy or the amount of drugs involved in her offense contradicts her testimony during the plea hearing that she had sufficient time to discuss any possible defenses with her attorney and was satisfied with his representation. (Crim. Case No. 5:11-cr-73-RLV-DSC-9, Doc. No. 171 at ¶¶ 31-32). It also contradicts her testimony that she was guilty of the offense and that she understood and agreed to the terms in her plea agreement. (Id. at ¶¶ 23; 25). Again, Petitioner offers no evidence to overcome this formidable barrier to collateral attack. See Lemaster, 403 F.3d at 221-22.

Even if Petitioner could overcome her sworn testimony, her assertion that her attorney failed to conduct an adequate investigation is purely speculative. Petitioner contends vaguely that the amount of drugs attributable to her "could have been less" than that attributed to other defendants and that the co-defendants "could have deliberately lied" about her conduct. (Doc. No. 1-1 at 4). She cites no evidence, however, that her offense did not involve more than 500 grams of methamphetamine, nor does she cite any evidence that she did not play a managerial role in the offense. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) (holding that when a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance of counsel, the petitioner must offer specific information as to what evidence an investigation would have produced). Petitioner's allegations regarding counsel's investigation of her role in the offense and the drug quantity contradict her sworn testimony at the plea hearing and are conclusory. These claims are insufficient to establish that counsel's performance was deficient or caused Petitioner to plead guilty. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory

9

allegations), <u>cert. denied</u>, 135 S. Ct. 47 (2014).

Furthermore, Petitioner cannot show prejudice from counsel's conduct with respect to the plea agreement. Petitioner does not directly allege that but for counsel's conduct she would not have pleaded guilty, but would have proceeded to trial. She contends that counsel should have tried to renegotiate the terms of the plea agreement and to have preserved her right to appeal, and she intimates that she could have proceeded to trial. (Doc. No. 1-1 at 4). However, this is insufficient to establish prejudice. <u>See</u> <u>Meyer v. Branker</u>, 506 F.3d 358, 369 (4th Cir. 2007). Additionally, Petitioner has presented no evidence that more investigation by counsel or negotiations with the Government would have resulted in a more favorable plea deal.

Finally, any contention that she would not have pleaded guilty but for counsel's alleged deficient performance is not objectively reasonable under the facts. The information regarding Petitioner's extensive involvement in the methamphetamine conspiracy was overwhelming. <u>See</u> (Crim. Case No. 5:11-cr-73-RLV-DSC-9, Doc. No. 336 at ¶¶ 12-38). By entering into the plea agreement, two other charges against Petitioner were dropped. (<u>Id.</u>, Doc. No. 162 at ¶ 2). By pleading guilty, Petitioner also received a three-level reduction for acceptance of responsibility. (<u>Id.</u> at ¶ 7(c)). Furthermore, by agreeing to her role in the offense and the amount of drugs involved in the offense as part of her plea agreement, she created more certainty regarding her sentence and removed the danger of these adjustments being higher. Additionally, the Government agreed not to seek a departure or variance. (<u>Id.</u> at ¶ 7(d)). If Petitioner had proceeded to trial, additional evidence regarding her participation in the conspiracy could have been brought forth and potentially could have been used to support the enhancements that were dropped at sentencing. Accordingly, Petitioner has not shown that a decision to proceed to trial

would have been reasonable.  See United States v. Fugit, 703 F.3d 248, 260-61 (4th Cir. 2012) (holding that pleading guilty involves accepting the benefits as well as the burdens of a plea agreement and may not be "lightly undone by buyer's remorse").  Agreeing to enter into the plea agreement was a voluntary and intelligent choice among the options available to Petitioner, and she has produced no evidence to show that she would have been in a better position had she not pleaded guilty.

Ample evidence existed to support Petitioner's role in the offense, as well as the drug quantity to which she pleaded guilty.  Application of the enhancement for being a manager or supervisor of the offense is appropriate where the individual manages the activities of a conspiracy or actively exercises some authority over other conspirators.  United States v. Slade, 631 F.3d 185, 190 (4th Cir. 2011).  Here, Petitioner taught a coconspirator how to manufacture methamphetamine.  (Crim. Case No. 5:11-cr-73-RLV-DSC-9, Doc. No. 336 at ¶ 23).  She also coordinated others to purchase pseudoephedrine to use to manufacture methamphetamine; she provided a location for the methamphetamine to be made; she directed others to cook methamphetamine for her; and she distributed methamphetamine for many manufacturers.  See (Id. at ¶¶ 16; 19-20; 24; 34; 36; 38).  This conduct shows that Petitioner was more than a mere participant in the offense.  Rather, she helped manage the activities of the conspiracy and exercised some authority over other conspirators.  Accordingly, she cannot show that her attorney provided ineffective assistance by allowing her to enter into a plea agreement that included this enhancement.

The evidence also supports the quantity of drugs to which Petitioner pleaded guilty. Here, the conspiracy involved 3.5 kilograms of methamphetamine, well above the 500 grams to

1.5 kilograms, to which Petitioner admitted.  See (Id., Doc. No. 336 at ¶ 10; Doc. No. 162 at ¶ 7).

Because she pleaded guilty to a conspiracy charge, she was liable for all amounts involved in the

conspiracy that were reasonably foreseeable to her.  See United States v. Blackman, 746 F.3d

137, 141 (4th Cir. 2014) (holding that in a conspiracy a defendant is liable not only for the

amount of drugs that she was personally involved with manufacturing or distributing, but also for

the amounts manufactured or distributed by other members of the conspiracy whose actions were

both "reasonably foreseeable and in furtherance of the conspiracy").  Therefore, Petitioner's

contention that she was only responsible for her own conduct is erroneous.  See (Doc. No. 1-1 at

4).

    Even considering only a portion of the conspiracy, Petitioner was responsible for more

than 500 grams of methamphetamine.  A co-conspirator testified that Petitioner had purchased

100 boxes of pseudoephedrine for Dowell and that others had purchased another 165 boxes for

him.  (Crim. Case No. 5:11-cr-73-RLV-DSC-9, Doc. No. 336 at ¶ 32).  Based on the fact that

Petitioner supplied Dowell with pseudoephedrine, she was Dowell's main seller, and she allowed

Dowell to manufacture methamphetamine at her house, she is responsible for the quantity of

methamphetamine manufactured by Dowell from this pseudoephedrine because such

manufacturing was reasonably foreseeable and in furtherance of the conspiracy.  See (Id. at ¶¶

15; 16; 31; 32).  Assuming that each box contained 96 tablets, or 2.88 grams of pseudoephedrine,

and applying the average yield rate for the conspiracy of .92 grams of methamphetamine per

gram of pseudoephedrine, the 265 boxes yielded 702 grams of methamphetamine.  See (Id. at ¶¶

10; 16).  Thus, defense counsel was not deficient for allowing Petitioner to plead guilty to an

amount exceeding 500 grams, nor can Petitioner show prejudice from the inclusion of this

amount in the plea agreement. Accordingly, Petitioner has not shown that her attorney provided deficient performance with respect to the plea agreement, nor that she was prejudiced by agreeing to her role in the offense and a drug quantity. See Strickland, 466 U.S. at 687-88, 694.

Consequently, Petitioner's contention that her attorney provided ineffective assistance by taking away her right to appeal the determination of her role in the offense and the drug quantity also fails. First, counsel's performance was not deficient because Petitioner voluntarily agreed to waive her right to appeal as part of her plea agreement. (Crim. Case No. 5:11-cr-73-RLV-DSC-9, Doc. No. 162 at ¶¶ 18-19). This standard term was clearly set forth in her plea agreement, and she testified that she understood and agreed to this term at the plea hearing. (Id., Doc. No. 171 at ¶ 26). Second, Petitioner has made no showing that any challenge to these enhancements would likely have succeeded on appeal. Therefore, she cannot establish prejudice.

In sum, Petitioner's contention in her petition that counsel pressured her into pleading guilty and that counsel failed to adequately investigate the offense is without merit.

**B. Petitioner's contention that counsel's ineffective assistance led to her being denied the right to qualify for the safety-valve adjustment**

Petitioner next contends that counsel was ineffective for encouraging her to agree to a three-level adjustment for being a manager or supervisor of the offense because it precluded her from seeking relief under the safety valve. (Doc. No. 1-1 at 5). Pursuant to the safety valve in U.S.S.G. § 5C1.2, certain defendants may be sentenced in accordance with the applicable guidelines and without regard to the statutory minimum. To qualify for application of the safety-valve adjustment, a defendant must not have more than one criminal history point; must not use violence, credible threats of violence, or possess a dangerous weapon; the offense must not result

in death or serious bodily injury; the defendant must not be an organizer, leader, manager, or supervisor of others; and the defendant must truthfully provide to the Government all information and evidence the defendant has regarding the offense before sentencing. U.S.S.G. § 5C1.2(a). Petitioner asserts that she was prejudiced because "it is more than probable" that she would have received a lower sentence had counsel provided effective representation. (Doc. No. 1-1 at 6). Petitioner also contends that if she had not agreed to the drug quantity as part of her plea agreement, a jury would have been able to determine the quantity of drugs involved in the offense and that counsel's conduct removed her right to have a jury decide this fact. (Id. at 7).

Petitioner's contention is without merit. Here, again, Petitioner's claim stems from Petitioner's voluntary decision to enter into a plea agreement that included these concessions (manager or supervisor role and drug quantity) and waived her right to a jury trial. The plea agreement clearly set forth her role in the offense, the applicable quantity of drugs, and the ten-year mandatory minimum sentence that applied to the offense, and she acknowledged these terms at the plea hearing. See (Crim. Case No. 5:11-cr-73-RLV-DSC-9, Doc. No. 162 at ¶¶ 4; 7; Doc. No. 171 at ¶¶ 9; 24-25). The evidence supported Petitioner's role in the offense, as well as the quantity of drugs to which she pleaded guilty, and Petitioner offers no evidence to the contrary.

Additionally, Petitioner cannot show that she would have qualified for an adjustment under the safety-valve reduction but for the plea agreement's inclusion of her concession that she played a managerial role in the offense. Again, she offers no evidence that she did not play such a role in the offense. Nor does she offer any evidence that she provided full information to the Government regarding the methamphetamine conspiracy. Accordingly, Petitioner has not shown

14

either deficient performance of counsel, where she voluntarily agreed to the role in the offense, nor has she shown prejudice, where she offers only speculation that she could have qualified for the safety-valve adjustment. Moreover, Petitioner's argument that counsel provided ineffective assistance by taking away her right to a jury determination of drug quantity is without merit. Petitioner voluntarily agreed to waive her right to a jury trial as part of her plea agreement. (Crim. Case No. 5:11-cr-73-RLV-DSC-9, Doc. No. 162 at ¶ 17; Doc. No. 171 at ¶ 20; 22). Furthermore, Petitioner has made no showing that a jury would have determined that the amount of drugs reasonably foreseeable to her was lower than the 500 grams to which she pleaded guilty.

In sum, Petitioner has failed to show that she received ineffective assistance of counsel. Indeed, as a result of counsel's able and competent representation, Petitioner received a sentence well below what she could have received. Petitioner was sentenced to one month over the ten-year mandatory minimum sentence after her counsel was able to negotiate a plea agreement and successfully argue that the guidelines range of 30 years to life imprisonment did not apply. Petitioner is obviously disappointed that she did not receive a sentence below the mandatory minimum, but she has wholly failed to show that counsel rendered ineffective assistance of counsel. Because Petitioner has shown neither deficient performance, nor prejudice, with respect to her attorney's performance, her ineffective assistance claims are denied and the petition will be dismissed.

## IV. CONCLUSION

For the reasons stated herein, the Court will dismiss the § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1.　Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and

**DISMISSED**.

2.　Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court

declines to issue a certificate of appealability as Petitioner has not made a

substantial showing of the denial of a constitutional right.  28 U.S.C. §

2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to

satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find

the district court's assessment of the constitutional claims debatable or wrong).

Signed: August 11, 2015

Richard L. Voorhees
United States District Judge